## CLYDE DYCHE *v.* VICKSBURG, SHREVEPORT & PACIFIC RAILROAD COMPANY.

RAILROADS. *Injured trespasser. Assuming care of. Duty. Common humanity.*

> Where a railroad company assumes the care of a trespasser, who has been injured by its cars, it takes upon itself the duty of treating him with common humanity.

FROM the circuit court of Warren county.

HON. PATRICK HENRY, Judge.

Dyche, the appellant, was the plaintiff in the court below; the railroad company, appellee, was defendant there. Appellant, an infant, sued to recover damages for the alleged wrongful death of her father, Kirk P. Dyche, who was dangerously injured by being run over by the cars of appellee, at Delta, Louisiana (an unincorporated town), in 1898. On the night of the accident Dyche, the decedent, left Vicksburg on his journey to some place in Louisiana on the Vicksburg, Shreveport & Pacific Railroad. He tried, but failed, to obtain consent to ride upon a freight train which left Delta shortly after dark, and then went into the caboose, which was upon a track awaiting the making up of a train to which it was to be attached. The caboose and another car were standing upon the track, and were not at the time connected with the engine, which was engaged, some distance away, switching cars. Deceased got off the caboose and went behind it to answer a call of nature. While thus engaged, a kicking switch was made, by which several cars were rolled down the track and struck the caboose, which ran over deceased and across his leg, crushing it above the ankle and below the knee. Deceased was taken from under the car, and messengers were sent to look for a doctor, but none was found. It was learned that all mode of carrying the

injured man across the Mississippi river to Vicksburg had been
suspended for the night, and he was put on the freight train,
then about to leave, and carried to Tallulah, a station eighteen
miles west of Delta, where a physician, one Dr. Herring, who
had been employed by the railroad company to do surgical
work for it, had been telegraphed to by the company to take
charge of the injured man upon arrival of the train at that place.
When the freight train on which deceased was being carried
reached Tallulah, at 9:30 P.M., deceased was met by Dr. Her-
ring, who gave him some morphine and bandaged his leg, and
stayed with him until about 2 o'clock in the morning, when de-
ceased was left with a negro boy, who had been engaged to stay
with him.    Upon the suggestion of Dr. Herring, deceased was
carried to Vicksburg the next day, on a freight train which
reached Delta (about three miles from Vicksburg) about 7 o'clock
A.M., to be placed in the hospital.    When Delta was reached,
deceased was carried down to the transfer boat, and, according
to the testimony of the yard master at Delta, was ferried back
and forth two or more times before being landed and sent to
the hospital.    He was finally taken to the hospital about 3
o'clock in the afternoon, where an operation was performed
about 6 or 7 o'clock.    On the following day Dyche died.    The
physician at the hospital who amputated the leg of Dyche tes-
tified, at the trial of the case, that the delay of the operation

lessened the chance of life, and that the operation should have
been performed immediately after the injury.    At the trial of
the case in the court below, a peremptory instruction was given
for defendant, and a verdict and judgment followed accord-
ingly.    From this judgment plaintiff appealed to the supreme
court.

*Magruder, Bryson & Dabney* and *Duncan Martin*, for ap-
pellant.

Dyche may have been a stranger and a trespasser, but when
the railroad company undertook the task of ministering to him

in his condition, there devolved upon it the duties of humanity. We think the law in this case is settled so far as the liability of the company is concerned for its conduct by the doctrine laid down in many cases. *Cincinnati, etc., R. R. Co.* v. *Cooper,* 16 Am. St. Rep., 337; *Allison* v. *Chicago, etc., Ry. Co.,* 42 Iowa, 274; *Northern Central R. R. Co.* v. *State,* 29 Md., 420.

If death was hastened by the negligence of the railroad company, it is not guiltless. *Louisville, etc., R. R. Co.* v. *Jones,* 82 Ala., 376; *Connolly* v. *Crescent City R. R. Co.,* 41 La. Am., 57; *Weightman* v. *Louisville, etc., R. R. Co.,* 70 Miss., 563.

There was neglect on the part of the company in taking the injured man to Tallulah, instead of bringing him to Vicksburg, and in the manner of same. It was guilty of negligence of the grossest kind in its treatment of Dyche at Tallulah and upon the transfer boat when he was being brought back. Whether this negligence is established conclusively by the evidence is not the question to be considered here. If the evidence even tended to establish such negligence, the granting of the peremptory instruction was error. *Lowenstein* v. *Powell,* 68 Miss., 73.

There is a material conflict in the evidence upon the point of Dr. Herring's competency, upon the question of how long the injured man was allowed to remain upon the transfer boat, and as to when the hospital was notified and the ambulance requested to be sent. This being the case, it was improper to give the peremptory instruction. *Carson* v. *Leathers,* 57 Miss., 650; *Richardson* v. *Toliver,* 71 Miss., 966; *Thrasher* v. *Gillespie,* 52 Miss., 840; *Cantrell* v. *Railroad Co.,* 69 Miss., 435; *Timberlake* v. *Compress Co.,* 72 Miss., 323.

*McWillie & Thompson,* for appellee.

There seems to be no room for serious contention about the nonliability of the railroad company for the infliction of the

injuries. The decedent was a trespasser pure and simple. He was a trespasser in the company's yard, a trespasser in its car, and a trespasser when under its cars at the time he was run over. There is not a particle of evidence showing, or tending to show, that any employee of the company knew he was under the cars, or that any one of them willfully or wantonly did anything which caused his injury.

The carrying of the wounded man to Tallulah, under the circumstances detailed in evidence, could not and did not impose liability. Search was promptly made for Dr. Dangerfield, the only resident physician at Delta; he could not be found; all means of crossing the river and carrying the unfortunate man to Vicksburg were beyond reach for the time being. It was not improperly concluded that the best thing to do was to carry Mr. Dyche to Tallulah, eighteen miles distant, and for which place the train was ready to start, and place him under the care of Dr. Herring. There is no averment in the declaration that the railroad was negligent in the selection of Dr. Herring, or that he was incompetent as a physician and surgeon. The injured man was placed with Dr. Herring, and this was done within a reasonable time. In fact, the plaintiff in the court below did not controvert the fact that if Dr. Herring had amputated the wounded leg such surgery would have been in time. The railroad company had done its full duty when it caused the wounded man and Dr. Herring to be brought together. *Baltimore, etc., R. R. Co.* v. *State*, 41 Md., 288. Not having been negligent, or even being charged with negligence, in the selection of Dr. Herring, the company was not responsible for his management of the case.

Dr. Herring, however, after administering to the patient and thereby assuming a professional relation to him, advised that Dyche be returned to Vicksburg the next morning. The railroad company in carrying him back was acting under the professional advice of the physician; it did carry him back and caused him to be delivered to the Vicksburg hospital authori-

ties, by whom the leg was amputated and the poor man died shortly thereafter. There is some testimony to the effect that the entire delay diminished the chances of the patient's successfully enduring the amputation, but none whatever to show, or tending to show, that the delay in crossing the river on the return trip did even this. There is nothing to show that the man would not have died had his leg been amputated at once after he was taken from under the cars, or as soon thereafter as good surgery would permit. And, strange to say, there is no evidence in the record, beyond mere inferences from the fact of its having been done at Vicksburg, that amputation was essential or proper. The liability of a railroad company in such cases can be established only by showing that it was negligent in the selection of a surgeon. Elliot, in his work on railroads, says (sec. 225, vol. 1): "If a railroad exercises reasonable care in selecting a physician or surgeon to treat an injured employee, it is not liable for the acts of such surgeon or physician. The physician or surgeon so employed does not become the agent of the company." And the author proceeds to show that there is no general duty to care for sick or injured employees. If this be true, in reference to employees, how much more is it true in reference to injured trespassers? In fact, it may be truly asserted that a railroad company is under no legal obligation to do anything for a wounded trespasser who is the author of his own misfortunes. Humanitarian considerations, and moral obligations are of course strong, but they cannot be made the basis of a suit at law for damages because of their breach. Public policy may require that a railroad company shall be under obligation to furnish medical and surgical aid to injured employees and passengers, and the law of master and servant may impose such obligations on masters to injured servants; but there is no public policy which would impose such liability to a trespasser; it can be no more imposed upon a railroad company than upon a natural person. If the carriage of an individual runs over and wounds a tres-

passer on the owner's grounds, the owner is under no legal obligation to furnish medical or surgical aid. If a company, however, assumes to do so, it does not, and cannot, in the nature of things, be under greater obligation than when it assumes to do the same thing for its injured employees or passengers.

The following authorities all hold that a railroad is not responsible if it be free from negligence in the selection of medical aid: 3 Elliott on Railroads, sec. 1388; *Ohio, etc., R. R. Co.* v. *Early* (Ind.), 28 L. R. A., 546, to which is appended a valuable note collecting authorities as to the duty of the master to furnish medical aid to injured servants. *Quinn* v. *Kansas City, etc., R. R. Co.*, 94 Tenn., 713, s. c. 28 L. R. A., 552; *Pittsburg, etc., R. R. Co.* v. *Sullivan* (Ind.), 27 L, R. A., 840; *Union, etc., R. R. Co.* v. *Artist*, 60 Fed. Rep., 365, s. c. 23 L. R. A., 581; *Allen* v. *Steamship Co.* (N. Y.), 15 L. R. A., 166; *O'Brien* v. *Cunard, etc., Co.* (Mass.), 13 L. R. A., 329; *McDonald* v. *Massachusetts Hospital*, 120 Mass., 432, s. c. 21 Am. Rep., 529; *Second* v. *St. Paul, etc., R. R. Co.*, 18 Fed. Rep., 221; *Hearness* v. *Waterbury Hospital*, 66 Conn., 98, s. c. 33 Atl. Rep., 595.

After turning plaintiff's father, in his injured condition, over to Dr. Herring, the railroad company had performed its full duty. The shipping of him back to Vicksburg was a new and independent transaction. There is not sufficient evidence of delay in bringing him back to Vicksburg the next day to warrant a verdict against the company for his death, if indeed any amount of delay would do so. There is certainly no evidence of willful delay, or that any one connected with his carriage on the return trip knew that evil consequences were likely to flow from delay. An action can be maintained only for the wrongful death of another. If the servants of the appellant, who transported Mr. Dyche back to Vicksburg were unconsciously the cause of, or contributed to, his death, they would not be

liable personally to the plaintiff, and if they are not liable, the railroad company cannot be.

Argued orally by *Duncan Martin*, for appellant, and by *R. H. Thompson*, for appellee.

CALHOON, J., delivered the opinion of the court.

It is manifest, as we think, that the railroad company cannot be held liable for the original injury of the father of appellant. We think, too, that it is not liable for any negligence or want of skill of the surgeon at Tallulah, on the facts in this record. Nevertheless, we think the jury should have been permitted to pass on the acts of the company in shipping the helpless man to Tallulah, and after they brought him back. Assuming the charge of Dyche as it did, it was charged with the duty of common humanity, and the jury should have been allowed to pass upon whether or not it performed this duty. It is to be charged with no higher degree of duty than that of ordinary humanity, but the jury must settle that on the facts. We subscribe to the reasoning in the case of *Railway Co.* v. *State*, 29 Md., 439–442 (96 Am. Dec., 545), and think the authority of this case is not disturbed by *Railway Co.* v. *State*, 41 Md., 288 *et seq*.

*Reversed and remanded.*