MICHAEL O'LEARY, Appellant, v. ERIE RAILROAD COMPANY, Respondent.

NEGLIGENCE — LIABILITY OF RAILROAD COMPANY FOR INJURY TO EMPLOYEE OF CONTRACTOR. A railroad company owning and operating a grain elevator is liable to an employee of a contractor, engaged to place and load cars under the loading spout of the elevator and remove such loaded cars therefrom, for an injury caused by the negligence of the company's employees in failing to set the brake upon a car standing lowest on an inclined track leading to the elevator, where it had been the custom of the company for years prior to the accident in placing cars upon such track to set the brake upon the lowest car, and the company knew that the work to be performed by the contractor's employees was dangerous unless this was done with customary and reasonable care, and that such employees habitually relied upon this care to protect them from danger.

O'Leary v. Erie R. R. Co., 51 App. Div. 25, reversed.

(Argued December 18, 1901; decided December 31, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 17, 1900, upon an order which reversed a judgment in favor of plaintiff, entered upon a verdict and an order denying a motion for a new trial, and granted a new trial.

This action was brought to recover for personal injuries alleged to have been caused by the negligence of the defendant.

The defendant was the owner of an elevator on the bank of Buffalo creek, in the city of Buffalo, N. Y., about 240 feet in length, extending north and south. A siding started at a point in the main track of the defendant's railroad north of

19

the elevator, extended through it and to a point 292 feet south of the southerly end. The track within the elevator was level. In the portion which extended to the south there was a gradual rise from the south door of two and three-tenths feet in the entire distance of 292 feet. Cars left on that part of the siding without setting the brakes, it is claimed, would start and move by gravity slowly down towards and into the elevator. The track was built with this incline to facilitate placing the cars by hand under the grain spouts in the elevator.

The defendant had entered into a contract with one Sheehan which was in force at the time of the accident, a similar contract having been in force for some years prior, which provided among other things that Sheehan was "to load and trim all cars with grain that may be placed at second party's elevator in Buffalo, known as the Erie Elevator * * *." And "to furnish all labor necessary to move all cars from the south end of said Erie Elevator and place such cars under the loading spout, and remove all such cars immediately after loading to a distance not less than sixty feet north from the northerly entrance of said Erie Elevator."

Shortly after the close of the day's work on the 5th of May, 1895, but in broad daylight the defendant pushed a string of eleven cars from its main track on the north on to the elevator track, leaving about half of the cars standing upon the level track in the elevator and the other half on the incline track at the south end. The cars were all coupled together and were left perfectly stationary, the four or five cars on to the level track securely holding in place the cars on the incline. Having placed the cars in the position above indicated, the engine was detached and the train crew and all of the employees of the defendant left the elevator. After the cars had been standing fifteen or twenty minutes in exactly the same position in which they had been placed by the defendant, Sheehan directed his men, including the plaintiff, to move the northerly four or five cars farther into the elevator so that the doors at the south end might be closed for the night. The first or

northerly car of the line was moved with Sheehan's team, the next two were pushed forward by some of his men. The plaintiff then went behind the fourth car and moved it forward by putting his shoulder against it and pushing. When he had moved it a short distance and while pushing it all the cars behind him on the incline started and moved slowly down the grade into the elevator, catching the plaintiff between the car he was pushing and the one immediately behind him. His arm was crushed and injured in such a manner that amputation at the shoulder joint was necessary, which is the injury complained of. The evidence tends to show that it had been the custom of the defendant for years prior to the accident, when it placed cars upon the elevator track for Sheehan to load, to set the brake upon the southerly car of those standing upon the incline; that the plaintiff relied upon such custom and the accident resulted because of the failure of the defendant to follow such custom upon the occasion in question. It is claimed that such failure constituted negligence for which the defendant is liable to the plaintiff.

*John Cunneen* for appellant. There was imposed by defendant's agreement to provide the cars on the switch at the south end of the elevator a duty to exercise proper care in so placing them, and when a particular method of doing this had been adopted and pursued for years between the parties, and it was clearly apparent that a departure from it by the defendant, without notice to the plaintiff and his co-employees, would very probably result in such an accident as did happen in this case, the defendant was guilty of negligence in departing from this method and failing to set the brake on the rear cars. (*Mangam* v. *B. R. R. Co.*, 38 N. Y. 457; *Beiseigel* v. *N. Y. C. R. R. Co.*, 40 N. Y. 19; *Kissinger* v. *N. Y. & H. R. R. Co.*, 56 N. Y. 538; *Dolan* v. *D. & H. C. Co.*, 71 N. Y. 285; *Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 25; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518.) Plaintiff was not guilty of contributory negligence. (*Kittel* v. *Turl*, 162 N. Y. 255; *Galvin* v. *Mayor, etc.*, 112 N. Y. 223.)

*Adelbert Moot* for respondent. The defendant was not negligent, and the injury to plaintiff was not caused by the negligence of defendant. (*Houghkirk* v. *D. & H. C. Co.*, 92 N. Y. 227; *Nicholson* v. *Erie Ry. Co.*, 41 N. Y. 525; *Sutton* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 243; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 181.) The jury was misled by the contradictory charge of the court in regard to whether it was usual or customary to brake these cars. (*Chapman* v. *E. R. R. Co.*, 55 N. Y. 579.)

Landon, J. The plaintiff's act in moving the fourth car was not a negligent act if he had reasonable grounds to believe that the defendant had set the brake upon the rear car of the string of coupled cars. The defendant had placed the cars there and had not set the brake upon the rear car. If the defendant had sufficient cause to apprehend that the plaintiff or his fellow-workmen would, in the usual course of his or their service, start the forward cars without looking to see whether the rear brake was set, in reliance upon defendant's usual custom to set it, then defendant had notice that its omission to set the brake was setting a trap into which the plaintiff or his fellow-workmen would be in imminent danger of falling, and thus that its omission would expose the plaintiff to the danger which befell him. This would be, in legal sense, the sole negligent cause of plaintiff's injury, for without such negligence it would not have happened, and no negligence of the plaintiff would have contributed to it. The verdict of the jury, upon evidence tending to support it, establishes just the situation stated. The defendant is liable because although it owed no contractual duty to the plaintiff, it had a contract with his employer under which plaintiff was, with the defendant's consent, engaged in moving these cars for defendant's benefit, and it was defendant's duty to perform whatever service it undertook in execution thereof with reasonable care, and not to omit such customary care as usually sufficed to protect plaintiff and his fellow-workmen from danger, upon which it knew they habitually relied.

The contract does not impose any duty of care upon the defendant in placing the cars, nor when defendant undertakes to place them, does it exempt it from care. The obligation of care arises from its duty to do what it undertakes to do in such way as not to lead others, as lawfully present and employed as itself, into dangers created by itself and not obvious to them.

The defendant had voluntarily assumed to perform the first step in the sequence of acts, in which the plaintiff's act would be the second, and known to defendant to be a dangerous one if the first should be negligently performed. Hence, the duty of reasonable care rested upon defendant, and under the circumstances reasonable care was the defendant's customary care, because defendant had notice that plaintiff was accustomed to rely upon it.

The judgment and order should be reversed and the judgment entered upon the verdict affirmed, with costs in all the courts.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, CULLEN and WERNER, JJ., concur.

Judgment accordingly.