STECKMAN, Plaintiff and Appellant v. SILVER MOON, INC., et al., Defendants and Respondents and MONDINI, Defendant

(90 N.W.2d 170)

(File No. 9640. Opinion filed May 21, 1958)

**Campbell, Voas & Richardson, Vernon Williams,** Aberdeen, for Plaintiff and Appellant.

**Agor, Bantz & Siegel,** Aberdeen, for Defendants and Respondents.

ROBERTS, J. Plaintiff is the special administratrix of the estate of her deceased husband, Ernest Steckman. Plaintiff sought damages in the sum of $20,000 for death by wrongful act and an additional sum of $26,100 for pain and suffering of decedent.

Defendants moved for a directed verdict at the close of plaintiff's case on the grounds (1) that there was no evidence that defendants were guilty of negligence; (2) that the contributory negligence of the decedent barred recovery; and

(3) that plaintiff was without authority as special administratrix to commence an action for wrongful death.

The court granted the motion and directed the jury to return a verdict in favor of the defendants. Plaintiff appeals from the judgment entered thereon.

Ernest Steckman, 38 years old, a resident of Minneapolis, Minnesota, had been employed by a contracting company for about six years. He had been working several weeks on a construction job in Aberdeen, South Dakota, and during that time had a room at the YMCA. Defendant Ronald Mondini also resided at the YMCA. During the evening of February 3, 1953, defendant Mondini was invited to decedent's room to listen to a radio broadcast of a basketball game and during such visit decedent had at least one drink of whiskey. Defendant Mondini left the YMCA alone about 10 o'clock that evening and stopped at the Silver Moon bar where he was joined by decedent. They did further drinking at two other bars. Sometime after 11:30 o'clock p. m. decedent returned to the Silver Moon bar and soon thereafter defendant Mondini entered and an argument immediately followed. Others present at the time were defendant William P. Gese, managing officer of the Silver Moon, Inc., and Joe and Irene Gese, brother and sister-in-law of defendant Gese. When a fight between Mondini and decedent started, defendant Gese said to them that if "they wanted to fight they would have to get out." When defendant Gese later saw the participants standing in front of his place of business, he switched off the front light, put on his coat and followed them outside for the reason as he testified that he "was concerned about their stopping in front" of his place of business and "didn't want either one of them to get picked up." In an exchange of blows between decedent and defendant Mondini, decedent was knocked down and struck his head on the sidewalk. Defendants Gese and Mondini assisted him into the Silver Moon bar and by application of cold towels to his head stopped his nose from bleeding.

There was not much dispute as to the facts stated above. Witnesses disagreed as to decedent's physical condition after the fight. Defendant Gese testified: "I left the Silver Moon

with Mr. Steckman and Mr. Mondini. We went up to the 'Y'. * * * Deceased probably could have walked by himself. He walked with his head up and his legs were moving." A witness who observed defendants taking decedent to his hotel room testified that decedent was walking, but this was in contradiction of his signed written statement given before trial to the effect that decedent "was definitely dead weight * * * with his head down * * * and needed help." Defendant Mondini procured a key at the desk and unlocked the door to decedent's room. Defendants assisted decedent in remov- · ing part of his clothing, put him to bed and there is contradictory evidence as to whether or not defendants when they left locked the door. Decedent was on the floor when found about eight o'clock next morning, and "his head was at the foot of the bed * * *, face down, his face was in some blood." He was taken to a hospital where during the day he died.

The attending physician testified that the cause of death "was hemorrhage into the brain" caused by a "laceration and fracture of the brain and fracture of the skull"; that there were cuts and bruises on the face; that a fracture line apparently starting under the bruise behind the left ear proceeded to the level of the ear, over the top of the temporal bone and over the top of the eye; and that a fracture "branched off and into the center of the skull, the part that contains the pituitary gland."

■■ The right of action for the death of another was unknown at common law. Ulvig v. McKennan Hospit⌐l. 56 S.D. 509, 229 N.W. 383; Jensen v. Juul, 66 S.D. 1, 278 N.W. 6, 115 A.L.R. 1280. SDC Supp. 37.2201 provides that whenever the death of a person is caused by the wrongful act, neglect or default of another, damages may be recovered in an action by the personal representative. The statute is remedial and not punitive and allows recovery for the benefit of those specified therein as beneficiaries. Pain and suffering of a deceased injured person is not an injury resulting from death nor injury to the beneficiaries for which recovery is permitted by this statute. Simons v. Kidd, 73 S.D. 41, 38 N.W.2d 883.

Plaintiff administratrix contends that defendants having

assumed charge of an injured person were bound to exercise reasonable care and that the breach of this duty constituted a wrongful or negligent act. The rule on which plaintiff principally relies is expressed in the following quotation from the Restatement of the Law of Torts, § 324: "One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by (a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor's charge; (b) the actor's discontinuing his aid or protection, if by so doing he leaves the other in a worse position than when the actor took charge of him."

Comment c under the same section reads: "The rule stated in this Section relates to the conditions necessary to subject the actor to liability for the bodily harm of another under the conditions stated. The bodily harm of which the actor's conduct is a legal cause may be either an actual increase in his injuries due to the improper manner in which the actor acts in giving the aid or protection, or it may be an aggravation of the original harm which would have been avoided had the actor acted with reasonable care for the other's safety."

In Carey v. Davis, 190 Iowa 720, 180 N.W. 889, 892, 12 A.L.R. 904, it appeared that plaintiff, a laborer working in a gravel pit, was stricken by heat and rendered helpless and that his employer caused him to be removed while still unconscious to a place where the injured person was exposed to increased heat and discomfort and there abandoned for several hours. The court said: "One person seeing another in distress may or may not be under legal obligation to afford him relief, but, if he does undertake it, he is, of course, bound to act with reasonable prudence and care to the end that, if his effort be unavailing, it shall at least not operate to increase the injury which he seeks to alleviate." Northern Central Railway Co. v. State, 29 Md. 420, 96 Am.Dec. 545, a leading case, is illustrative of the application of the rule. It appears from the facts in that case that a man in an unconscious condition was taken from the pilot of an engine.

He was laid on a plank in a warehouse and left there alone all night. He revived during the night and had moved several paces from where he was laid. There was testimony to the effect that he probably regained consciousness whereupon his blood began to flow and that the loss of blood caused his death. The defendant company was held liable for the failure of its agents in not properly caring for the injured person after undertaking to assist him. In Dyche v. Vicksburg, S. & P. R. Co., 79 Miss. 361, 30 So. 711, defendant undertook to convey plaintiff to a hospital. It was held that while defendant railroad company was not liable for the initial injury it having taken charge of the injured person owed him the duty of reasonable care and that unreasonable delay in securing medical attention constituted actionable negligence. The case of Depue v. Flateau, 100 Minn. 299, 111 N.W. 1, 8 L.R.A.,N.S., 485, though dissimilar in the facts, lends support to the rule under consideration. It was held that defendant who invited into his home the plaintiff owed the duty not to expose his guest to danger on a cold winter night by sending him away unaccompanied knowing that plaintiff was in a fainting and helpless condition.

The law thus recognizes that there is no general duty to come to the assistance of a person who is ill or intoxicated and unable to look out for himself. As stated in 38 Am.Jur., Negligence, § 16: "Feelings of kindliness and sympathy may move the good Samaritan to minister to the needs of the sick and wounded at the roadside, but the law imposes no such obligation, and suffering humanity has no legal complaint against those who 'pass by on the other side.'" But once a person has become the good Samaritan and undertakes to render assistance, the law imposes on him the duty of reasonable care toward the one assisted. The liability in most cases has arisen because defendant made the situation worse, either by increasing the danger, or by misleading plaintiff into the belief it had been removed, or by inducing him to forego the possibility of help from other sources. Zelenko v. Gimbel Bros., Inc., 158 Misc. 904, 287 N.Y.S. 134; O'Leary v. Erie R. Co., 169 N.Y. 289, 62 N.E. 346; Finer v. Nichols, 175 Mo.App. 525, 157 S.W. 1023; Lacey v. United States, D.C., 98 F.Supp. 219; see also annotation

following Owl Drug Co. v. Crandall, 52 Ariz. 322, 80 P.2d 952, 120 A.L.R. 1521,

■ ■ An essential element of a cause of action for death is that there be a causal connection between the wrongful act, negligence or default of the defendant and the damage that plaintiff has sustained. Liability may depend upon whether or not the actor as an ordinarily prudent person, should reasonably have foreseen as a consequence of his act that injury would result. Ford v. Robinson, 76 S.D. 457, 80 N.W.2d 471. If the risk of harm cannot be foreseen by an ordinarily prudent person, the risk is not unreasonable and there is no negligence.

■ ■ The plaintiff's theory seems to be that the conduct of the defendants made the situation of the deceased injured person worse by depriving him of the possibility of help from other sources. But there was no tort liability unless it appears there was a causal connection between the act complained of and death. The evidence is uncontradicted that decedent sustained a skull fracture when his head hit the sidewalk during the fight with defendant Mondini and that the fracture and hemorrhage resulting from a brain injury caused death. There is no proof on plaintiff's behalf that lack of medical attention during the interval of eight or nine hours after decedent sustained his injuries or an aggravation of his injuries by falling while trying to arise from his bed sometime during the interim caused his death. Plaintiff sought the opinion of a medical witness as to the probability that aggravation of the head injuries caused death. The hypothetical questions put to the expert assumed as one of the facts upon which his opinion was to be based that decedent fell from his bed and bumped his head on the floor. The record is devoid of evidence that the decedent then bumped his head, particularly with sufficient force as to cause an additional brain injury. The opinion of the physician as to the cause of death could not be invoked to supply a fact necessary to support his conclusion. The sustaining of objections to these hypothetical questions was not error. See Dean v. Seeman, 42 S.D. 577, 176 N.W. 649. We conclude that the evidence would not

have supported a verdict for wrongful death. We have adhered to the rule so often announced by this court that upon appeal from a judgment upon directed verdict for defendant this court views the testimony in the light most favorable to the plaintiff.

The legislature at the next session following the decision of this court in Simons v. Kidd, supra, enacted a survival statute reading as follows:

"All causes of action shall survive and be brought, notwithstanding the death of the person entitled or liable to the same. Any such action may be brought by or against the executor or administrator or successors in interest of the deceased." SDC Supp. 33.0414-1 (Ch. 186, Laws 1951).

It is clear that if a cause of action accrued to Ernest Steckman during his lifetime, it survived to his personal representative. Contending that the causes of action under the survival and wrongful death statutes are complementary rather than repugnant to each other, one for damages to the injured person while he lived and the other for damages to the beneficiaries resulting from death, plaintiff as executrix for the benefit of the estate sought in a second cause of action recovery for pain and suffering actually experienced before death and for medical and hospital expenses. The basis of such cause of action is the allegation of negligence set forth in the first cause of action. Plaintiff asserts no right of recovery against defendant Mondini for injuries sustained prior to the time defendants undertook to render assistance. The right to join a cause of action for pain and suffering of decedent with a cause of action for wrongful death is not here questioned.

■■ SDC Supp. 37.2201 substantially follows Lord Campbell's Act in limiting the bringing of an action for wrongful death to those cases in which if death had not ensued the injured person would have been entitled "to maintain an action and recover damages." Rowe v. Richards, 35 S.D. 201, 151 N.W. 1001, L.R.A.1915E, 1075. The plaintiff in either instance has the burden of establishing negligence. In an action to recover for pain and suffering endured by decedent,

plaintiff need prove only that the wrongful injury was the proximate cause thereof, but not necessarily the cause of death. Goltz v. Besarick, 313 Mass. 14, 46 N.E.2d 9. It does not, therefore, necessarily follow that a plaintiff failing to recover for wrongful death is not entitled to recover on a survival cause of action.

It does not appear that defendants knew or should have known that decedent was so severely injured as to require immediate medical attention. There can be no duty resting on one who has taken charge of an injured person to secure immediate medical attention or assist him to a place where such aid can be furnished unless there is a known emergency. Yazoo & M. V. R. Co. v. Leflar, 168 Miss. 255, 150 So. 220; Clark v. State, 195 Misc. 581, 89 N.Y.S.2d 132. Plaintiff contends that decedent's injuries because of the acts or omissions of the defendants were aggravated causing additional pain and suffering. We think that the evidence would not have justified recovery on this theory. It is apparent that the jury could have found from the evidence that decedent endured pain and suffering prior to his death. But this is not the answer. In order to recover, plaintiff was required to show that decedent endured pain and suffering apart from the initial injuries and that there was a causal connection between the additional pain and suffering and the negligence of the defendants. Admittedly, the unconscious condition of decedent lying on the floor of his hotel room the morning after the fight, the bloodstained wall and the disarrangement of furnishings indicate the possibility of a fall and thrashing about that may have aggravated his injuries. To attach liability on defendants, the evidence must show more than the possibility of aggravated injuries occurring because of their fault. While facts making up a case of negligence may be inferred from circumstances, the circumstantial proof must be such as "will produce conviction to a reasonable certainty on an unprejudiced mind." Meier & Lockwood Corp. v. Dakota Live Stock & Inv. Co., 46 S.D. 397, 193 N.W. 138, 142; Hjermstad v. Petroleum Carriers, 74 S.D. 406, 53 N.W.2d 839. It would not have been within the province of the jury to

convert the possibility presented by the evidence into something more by the rendition of a verdict.

The conclusions reached render unnecessary consideration of the contention that plaintiff could not as special administratrix without express direction of the county court commence an action for wrongful death. We have considered the other assignments of error and find no reversible error.

Judgment appealed from is affirmed.

All the Judges concur.