2001 SD 126

**Ruby PETERSON, Individually and As Special Administratrix of the Estate of Edward L. PETERSON, Deceased, Plaintiff and Appellee,**

v.

**Robert J. BURNS, Defendant and Appellee,**

and

**Glen Johnson and Gregory Eiesland, Defendants and Appellants.**

No. 21689.

Supreme Court of South Dakota.

Argued May 31, 2001.

Decided Oct. 24, 2001.

Rehearing Denied Nov. 13, 2001.

Mark V. Meierhenry and Robin Jacobson Houwman of Danforth, Meierhenry & Meierhenry, Sioux Falls, for plaintiff and appellee.

Daniel F. Duffy of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and appellee Robert Burns.

Richard O. Gregerson of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendant and appellants Glen Johnson and Gregory Eiesland.

GORS, Circuit Judge.

[¶ 1.] Attorneys Glen Johnson and Gregory Eiesland (Johnson and Eiesland) petitioned for intermediate appeal from a circuit court decision that determined that the three-year wrongful death statute of limitations, rather than the two-year medical malpractice statute of limitations, governs wrongful death claims from medical malpractice. The petition was granted and we now reverse.

### FACTS

[¶ 2.] In *Peterson v. Hohm*, 2000 SD 27, 607 N.W.2d 8, this Court affirmed a judgment holding that a wrongful death claim brought by Peterson's estate was time-barred because the action was filed in state court after the statute of limitations had run. The pertinent facts of that case follow:

On March 22, 1995, Edward Peterson (Edward), who was sixty years old, went to the Tschetter and Hohm Clinic in Huron, South Dakota, complaining of headaches, nausea, vomiting and neck stiffness. He received a CT Scan of his head, was treated by Doctors at the clinic and released. On April 3, 1995, Edward suffered an undiagnosed cerebral hemorrhage that caused him to collapse. He died six days later.

At the time of Edward's death, he and Ruby were residents of Beadle County, South Dakota. Shortly after Edward's death, Ruby moved to Fairmont, Minnesota. On March 10, 1997, the Honorable Eugene Martin, Third Circuit, Beadle County, granted Ruby's petition for appointment as special administratrix of

Edward's estate. On March 21, 1997, Ruby filed a medical malpractice action on behalf of her husband's estate against Doctors in the United States District Court for South Dakota based upon diversity of citizenship. In her complaint, Ruby alleged that Doctors were negligent in their failure to diagnose and treat Edward for his cerebral aneurysm. Doctor Knute Landreth (Landreth) asserted in his separate answer that no jurisdiction existed. After Doctors filed their answer, the parties undertook discovery, which included: depositions of the parties, exchange of interrogatories and production requests, and identification and disclosure of expert witnesses. Over one year after Doctors filed their answer, they moved to dismiss the action for lack of subject matter jurisdiction. Doctors argued that in determining diversity of citizenship under 28 USC § 1332(c)(2), the citizenship of the legal representative of the estate of a decedent is deemed to be the same as the decedent at the time of death. While Doctors' motion to dismiss was pending, Ruby filed a state court action on June 23, 1998, in Beadle County, South Dakota, alleging issues identical to the federal action. On September 17, 1998, the federal court found that the decedent and Doctors were all residents of South Dakota; therefore, no diversity of citizenship existed and the suit was dismissed for lack of subject matter jurisdiction.

Subsequently, Doctors filed a motion for summary judgment in the state court action on the grounds that the statutes of limitations had run. Doctors argued that under SDCL 15-2-14.1 the statute of limitations for medical malpractice is two years from the alleged malpractice. In addition, the statute of limitations under SDCL 21-5-3 for a wrongful death action is three years. The circuit court noted that Ruby filed the state court action 440 days after the expiration of the statute of limitations for a medical malpractice claim, and 75 days after the expiration of the statute of limitations for a wrongful death action. The trial court found that both statutes of limitations had expired and granted Doctors' summary judgment motion.

*Id.*, 2000 SD 27 at ¶¶ 2–5, 607 N.W.2d at 9–10 (footnote omitted).

[¶ 3.] Attorney Robert Burns (Burns) filed the action for medical malpractice in federal court before the two-year medical malpractice statute of limitations expired. On March 12, 1998, Burns withdrew and Johnson and Eiesland were substituted as counsel. Johnson and Eiesland did not institute an action in state circuit court until June 23, 1998, after both the two-year medical malpractice and three-year wrongful death statutes of limitations had expired. On February 23, 2000, this Court affirmed the circuit court's dismissal of the state action because it was time-barred by all statutes of limitations. *Id.*, 2000 SD 27 at ¶ 19, 607 N.W.2d at 14.

[¶ 4.] Thus, Peterson's estate was barred from bringing any action arising from his death except an action against the attorneys for legal malpractice. Ruby Peterson, individually and as special administratrix of her husband's estate, filed this legal malpractice action against Burns, Johnson and Eiesland. The attorneys cross-claimed and raised the issue of the applicable statute of limitations. The circuit court held that the three-year wrongful death statute of limitations applied. Johnson and Eiesland petitioned for intermediate appeal, which this Court granted. They raise a single issue:

[¶ 5.] **Does the three-year wrongful death statute of limitations in SDCL 21–5–3 extend the two-year medical mal-**

practice statute of limitations set forth in SDCL 15–2–14.1?[1]

## ANALYSIS AND DECISION

■ [¶ 6.] All of Peterson's attorneys in the medical malpractice action applied the two-year medical malpractice statute of limitations. Burns commenced his action in federal court one day before two years had elapsed from the occurrence of the claimed medical malpractice. Once the federal case filed by Burns was dismissed, Johnson and Eiesland argued that the pendency of the federal action tolled the state medical malpractice statute of limitations, not that the three-year wrongful death statute of limitations applied. None took the position that the three-year wrongful death statute of limitations applied until this lawsuit was filed. If the applicable statute of limitations is two years, only Burns may be liable in a legal malpractice action. If the applicable statute of limitations is three years, Johnson and Eiesland may also be liable.

## STANDARD OF REVIEW

■ [¶ 7.] This is a case of first impression in South Dakota, requiring statutory interpretation. We interpret "statutes under a de novo standard of review without deference to the decision of the trial court." *In re* Estate of Karnen, 2000 SD 32, ¶ 7, 607 N.W.2d 32, 35.

## THE STATUTES

[¶ 8.] The statute of limitations governing medical malpractice actions is set forth in SDCL 15–2–14.1, which provides in pertinent part that:

An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake or failure to cure shall have occurred, provided, a counterclaim may be pleaded as a defense to any action for services brought by a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts after the limitation herein prescribed, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred and was not barred at the time the claim was sued or originated, but no judgment thereon except for costs can be rendered in favor of the party so pleading it.

The statute of limitations for wrongful death claims is provided by SDCL 21–5–3:

Every action for wrongful death shall be commenced within three years after the death of such deceased person.

---

1. Burns argues that this Court's decision in *Peterson* implicitly resolved this issue. In *Peterson*, this Court stated that "[i]t is undisputed that SDCL 15–2–14.1 and SDCL 21–5–3 apply." *Peterson*, 2000 SD 27 at ¶ 10, 607 N.W.2d at 11. However, that was dicta and the issue before this Court in *Peterson* was:

Whether the trial court erred in holding that the state statute of limitations was not tolled or deemed satisfied during the pendency of Ruby's federal court action against Doctors.

*Id.*, 2000 SD 27 at ¶ 6, 607 N.W.2d at 10. Absent a jurisdictional defect, this Court has repeatedly held that "[a]n issue may not be presented for the first time on appeal." SD Subseq. *Injury Fund v. Federated Mut. Ins., Inc.*, 2000 SD 11, ¶ 29, 605 N.W.2d 166, 172. The issue of which statute of limitations applied was not previously raised by the parties and was not previously before this Court.

SDCL 15–2–1 applies to civil actions generally:

Civil actions can only be commenced within the periods prescribed in this title after the cause of action shall have accrued except where in special cases a different limitation is prescribed by statute. The objection that the action was not commenced within the time limited can only be taken by answer or other responsive pleading.

At issue in this case is whether a different limitation than the two-year medical malpractice statute of limitations is prescribed by the wrongful death statute of limitations.

### WRONGFUL DEATH

[¶ 9.] Two causes of action can arise from medical malpractice resulting in death. The first is an action by the representative of the deceased's estate to recover damages for personal injury and medical expenses. *Sander v. Geib, Elston, Frost Pro. Ass'n*, 506 N.W.2d 107, 127 (S.D.1993). The second is the legislatively created wrongful death action in SDCL 21–5–1 that may be brought in the name of the executor or administrator on behalf of certain beneficiaries.[2] SDCL 21–5–5; *Sander*, 506 N.W.2d at 127. These are separate and distinct causes of action and may have different plaintiffs, different remedies, different recipients of damages and different distributions of damage awards. *Id.*

[¶ 10.] Wrongful death (either survival of decedent's tort claims or a new cause of action in favor of the statutory beneficiaries) was unknown at common law. *Steckman v. Silver Moon, Inc.*, 77 S.D. 206, 209,

90 N.W.2d 170, 172 (1958). It took the passage of Lord Campbell's Act[3] in 1846 in England to create a cause of action in favor of certain survivors for wrongful death. South Dakota passed a wrongful death statute in 1909 creating a remedy that did not exist until the statute was passed. 1909 SD SessL ch 301, § 1. Even then, no survival action existed to recover damages for personal injury and medical expense resulting from medical malpractice. *Ulvig v. McKennan Hosp.*, 56 S.D. 509, 521, 229 N.W. 383, 388 (1930). The only action available was the new cause of action in favor of the beneficiaries named in the wrongful death statute. *Id.*, 56 S.D. at 522–23, 229 N.W. at 389. Survival actions for personal injury and medical expenses could not be maintained until after the Legislature amended what is now SDCL 15–4–1 to provide in pertinent part that "[a]ll causes of action shall survive and be brought, notwithstanding the death of the person entitled or liable to the same." 1951 SD SessL ch 186, § 1.

[¶ 11.] Not every death is wrongful. Some people die from disease or natural causes. Only those deaths caused by wrongful act, neglect, or default can be the basis for a wrongful death claim. *Steckman*, 77 S.D. at 212, 90 N.W.2d at 173. A cause of action for wrongful death accrues at death because the survivors cannot sue before the person is dead. Although the infliction of the cause of death and death itself are frequently contemporaneous,[4] sometimes death does not occur until much later. A patient can be in a coma for years while modern medicine keeps the body alive. The wrongful death

---

2. The surviving spouse and children or parents and next of kin are the statutory beneficiaries.

3. This legislation was also known as the Fatal Accidents Act.

4. In this case, there were eighteen days from the alleged malpractice to Peterson's death.

statute of limitations begins to run when the person dies. SDCL 21–5–3. Yet there has to be a causal connection between the death and some wrongful act. *Steckman,* 77 S.D. at 212, 90 N.W.2d at 173. In Peterson's case, the wrongful act was alleged to be medical malpractice.

## OCCURRENCE RULE

■ [¶ 12.] SDCL 15–2–14.1 is an "occurrence rule" statute of limitations for medical malpractice. *Beckel v. Gerber,* 1998 SD 48, ¶ 21, 578 N.W.2d 574, 578. The cause of action for medical malpractice accrues when the malpractice occurs. *Id.,* 1998 SD 48 at ¶ 9, 578 N.W.2d at 576. Prior to 1976, the medical malpractice statute of limitations was subject to a "discovery rule." [5] *Shinabarger v. Jatoi,* 385 F.Supp. 707, 711 (D.S.D.1974). In 1976, the Legislature repealed the discovery rule statute and enacted the current occurrence rule statute. 1976 SD SessL ch 145, § 4. Since that time, this Court has consistently recognized that the current medical malpractice statute of limitations is an occurrence rule and has rejected a discovery rule. *Beckel,* 1998 SD 48 at ¶ 21, 578 N.W.2d at 578; *Alberts v. Giebink,* 299 N.W.2d 454, 455–56 (S.D.1980).

## DAMAGES RULE

■ [¶ 13.] Burns wants us to treat death as a statutory "date of damages" rule with death being the date of damages. He argues that if death is caused by medical malpractice and death occurs before the two-year statute of limitations has run, then the wrongful death statute applies and the decedent's survivors get three more years to bring a medical malpractice action. Practically speaking, the estate could have almost five years to bring a medical malpractice action if death occurred one day before two years from the date on which the medical malpractice occurred.

[¶ 14.] However, even Burns' proposed damages rule has a deadline. Under Burns' argument, if death occurred two years and one day after the medical malpractice occurred, the decedent's estate would be time-barred from suit because the medical malpractice claim was not viable at the time of death. Burns' proposal would create injustice. The only difference between the two deaths would be two days. Nothing other than the passage of two days would change the two-year statute of limitations to a five-year statute of limitations for one estate and a two-year statute of limitations for the other estate. The deceased would be no more or less dead and the medical practitioner would be no more or less culpable in either case.

[¶ 15.] Burns' argument would make better intellectual sense if he proposed that death recommenced the medical malpractice limitations period. Then, everyone who died as a result of medical malpractice would have three years from death to bring a claim no matter when the malpractice occurred. However, the problem is obvious. A person can be kept alive on life support for years. The two-year statute of limitations for medical malpractice could expire while the body continued to exist on life support. Years later, when the life support is withdrawn or the body finally worn out, death could revive a medical malpractice action long after the statute of limitations had run. Contingent liability could linger for years. The Legislature sought to limit just this type of contingent liability by passing the two-year medical malpractice statute of limitations

---

5. Under the discovery rule, "an applicable statute of limitations does not begin to run until the harm is discovered rather than when the harm occurred." *Shippen v. Parrott,* 506 N.W.2d 82, 85 (S.D.1993).

without a discovery rule when it enacted SDCL 15–2–14.1 in 1976.

[¶ 16.] Our decision treats all medical malpractice plaintiffs the same. Applying the two-year medical malpractice statute of limitations from the date of the alleged malpractice, whether the action is for personal injury or death, is consistent with the Legislature's policy to limit the exposure of medical providers to liability for malpractice. All plaintiffs are allowed two years whether they live or die. SDCL 15–2–14.1. If the plaintiff cannot bring the action within two years, the plaintiff is barred by the medical malpractice statute of limitations.

[¶ 17.] This Court has also rejected discovery and damages rules in other professional malpractice cases. SDCL 15–2–14.2 provides an occurrence rule statute of limitations for legal malpractice identical to the occurrence rule in the medical malpractice statute of limitations. In *Green v. Siegel, Barnett & Schutz,* 1996 SD 146, 557 N.W.2d 396, this Court declined to deviate from the occurrence rule and rejected both discovery and damages rules. This Court said:

> The statute of limitations runs from the date of the breach of duty and not from the time when the extent of the resulting injury is determined. Although this issue has been addressed numerous times by this Court, the Legislature has not amended either statute at issue here to reflect anything but a rule of occurrence in legal malpractice actions. If a discovery or damages rule is the appropriate basis to trigger the running of the statute, such arguments should be presented to the Legislature for its consideration as to what is the appropriate public policy for this State.

*Id.,* 1996 SD 146 at ¶ 31, 557 N.W.2d at 404–05 (internal citations omitted).

[¶ 18.] Burns would have us rule that the Legislature conveniently provided the three-year wrongful death statute of limitations in SDCL 21–5–3 as a "date of damages" exception to the occurrence rule in SDCL 15–2–14.1. However, SDCL 21–5–3 was first enacted in 1909. 1909 SD SessL ch 301, § 3. No medical malpractice statute of limitations existed in 1909. The first medical malpractice statute of limitations was enacted in 1939. SDC 1939, § 33.0232(6)(c). The occurrence rule was added in 1976. It cannot reasonably be argued that the Legislature was able to "foresee (like a swami)"[6] in 1909 and provided an exception to the occurrence rule sixty-seven years in advance.

[¶ 19.] Therefore, we reject the argument that the wrongful death statute of limitations is a date of damages exception to the occurrence rule in the medical malpractice statute of limitations.

### LEGISLATIVE INTENT

[¶ 20.] When construing a statute, the court determines the intent of the Legislature from the words of the statute, giving them their plain meaning. *Hagemann v. NJS Eng'g, Inc.,* 2001 SD 102, ¶ 5, 632 N.W.2d 840, 843; *M.B. v. Konenkamp,* 523 N.W.2d 94, 97 (S.D.1994).

[¶ 21.] The general purpose of statutes of limitations is to limit, not extend, claimants' rights. This Court has often stated, " '[t]he purpose of a statute of limitations is speedy and fair adjudication of the respective rights of the parties.' " *Peterson,* 2000 SD 27 at ¶ 14, 607 N.W.2d at 12 (quoting *State of Minn. ex rel. Hove*

---

6. *In re Midland Ventures, Inc.,* 325 N.W.2d 300, 302 (S.D.1982) (Henderson, J., dissent-ing).

*v. Doese*, 501 N.W.2d 366, 370 (S.D.1993)). *See Jiricek v. Woonsocket Sch. Dist. No. 55-4*, 489 N.W.2d 348, 350 (S.D.1992); *Merkwan v. Leckey*, 376 N.W.2d 52, 53 (S.D.1985); *Burke v. Foss*, 334 N.W.2d 861, 864 (S.D.1983); *Chipperfield v. Woessner*, 84 S.D. 13, 16, 166 N.W.2d 727, 728 (1969). "[S]tatutes of limitations have allowed people, through 'legislative grace,' to be 'freed from the consequences of their actions after a statutory period of time resulting in peace of mind for the individual, less docket congestion, fewer administrative problems for the courts, and less work for law enforcement agencies. Stale claims are eliminated.'" *Peterson*, 2000 SD 27 at ¶ 14, 607 N.W.2d at 12 (citation omitted). Some of the reasons for limiting the right to bring lawsuits are to require claimants to exercise their rights to sue so their claims can be promptly investigated,[7] while witnesses are available, memories are fresh[8] and insurance is still in place.[9] They are regarded as statutes of repose designed to eliminate fraudulent and stale claims and operate against those who sleep on their rights. *Chipperfield*, 84 S.D. at 16, 166 N.W.2d at 728. A defense based upon a statute of limitations is meritorious and should not be regarded with disfavor, rather it should be treated like any other defense. *Openhowski v. Mahone*, 2000 SD 76, ¶ 11, 612 N.W.2d 579, 582; *Chipperfield*, 84 S.D. at 16, 166 N.W.2d at 728. Both the medical malpractice statute of limitations and the wrongful death statute of limitations are designed to limit lawsuits.

[¶ 22.] The medical malpractice statute of limitations provides that an action for medical malpractice can only be commenced within two years after the act of alleged malpractice occurred whether based on contract or tort. The statute is obviously intended to limit negligence actions for personal injury that could otherwise be brought within three years under the personal injury statute of limitations[10] or contract actions for medical services that could otherwise be brought within six years under the contract statute of limitations.[11] Just as obviously, the medical malpractice statute of limitations is intended to limit wrongful death actions based on medical malpractice to two years. If the statute can limit personal injury liability for malpractice to two years and contract liability for malpractice to two years, it can also limit actions for wrongful death based on medical malpractice to two years.

## NATURE OF THE CLAIM

[¶ 23.] The nature of the claim determines which statute of limitations applies. *Morgan*, 450 N.W.2d at 785. In *Morgan*, a former client sued an attorney. The complaint sounded in both the tort of attorney malpractice and breach of a partnership contract. In determining which statute of limitations applied, this Court reasoned that "[t]he choice of which statute of limitations should apply ulti-

---

7. *Moody v. L.W. Tyler, Custom Combiners*, 297 N.W.2d 179, 180 (S.D.1980); *Novak v. C.J. Grossenburg and Son*, 89 S.D. 308, 317, 232 N.W.2d 463, 468 (1975).

8. "[S]tatutes of limitations are primarily designed to assure fairness to defendants because they prevent claims from being brought when the relevant evidence is so old that it is unreliable...." *Morgan v. Baldwin*, 450 N.W.2d 783, 787 (S.D.1990) (quoting

*Williams v. Lee Way Motor Freight*, 688 P.2d 1294, 1297 (Okla.1984)).

9. See the problems created by cancellation of claims-made insurance policies in *Cromwell v. Rapid City Police Dep't*, 2001 SD 100, 632 N.W.2d 20.

10. SDCL 15–2–14(3).

11. SDCL 15–2–13(1).

mately rests on a characterization of the essence of the claim." *Id.*[12] This Court further reasoned that if doubt existed regarding the basis of the claim, and therefore which statute applied, then "such doubt [should] be resolved in favor of the longer limitation period." *Id.* at 786. Since the tort and contract claims in *Morgan* were inextricably intertwined, this Court applied the longer statute of limitations governing contracts.

[¶ 24.] In *Richards v. Lenz*, 539 N.W.2d 80, 85–86 (S.D.1995), a psychologist was sued for having a romantic relationship with a marriage counseling client. The medical malpractice statute of limitations had expired. The complaint alleged medical malpractice, negligence, breach of contract and fraud. First, this Court held that Lenz was not a medical practitioner when he performed marriage counseling. Then, applying the test from *Morgan*, this Court held that the three causes of action were intertwined and that the six-year contract statute of limitations, the longest period, should apply.

[¶ 25.] In *Rehm v. Lenz*, 1996 SD 51, 547 N.W.2d 560, the same psychologist was having a romantic relationship with a different client who was being treated for clinical depression. Again, the medical malpractice statute of limitations had expired. The complaint alleged negligence, breach of fiduciary duty, fraud and deceit, alienation of affections and breach of contract but did not allege medical malpractice. In a split decision on the issues, Chief Justice Miller, writing for the Court on the statute of limitations issue, adhered to the ruling in *Richards* that a psycho-

logist performing marriage counseling was not a medical practitioner and characterized the claim as tort, fraud and contract and applied a six-year statute of limitations. *Id.*, 1996 SD 51 at ¶ 17, 547 N.W.2d at 565–66. Justice Sabers, writing for the Court on the question whether Lenz was a medical practitioner, stated that a psychologist was a "practitioner of healing arts," because the client was being treated for depression. Justice Sabers would then have dismissed the complaint because it was for medical malpractice. However, Circuit Court Judge Dobberpuhl, in his concurrence, opined that the medical malpractice statute of limitations did not apply because "intentional acts" should be outside the purview of the medical malpractice statute of limitations. Justice Sabers replied that "it does not make any difference [whether the act was negligent or intentional] because SDCL 15–2–14.1 provides a two-year statute of limitations for [actions] 'whether based upon contract or tort.' Even intentional acts are torts and are included." *Id.*, 1996 SD 51 at ¶ 40, 547 N.W.2d at 569. Characterizing the claim under *Morgan* is not easy.

[¶ 26.] In *Bruske v. Hille*, 1997 SD 108, 567 N.W.2d 872, this Court affirmed summary judgment in favor of an oral surgeon who was sued by a former patient who claimed fraud and deceit for failing to inform her of the dangers of a defective implant in her jaw. The medical malpractice statute of limitations had expired. Characterizing the nature of the claim, this Court found that "[m]edical malpractice characterized as fraud and deceit will not

---

**12.** The "characterization of the claim" is analogous to the "categorization of a problem." As Justice Konenkamp wrote in his concurrence in *Martinmaas v. Engelmann*, 2000 SD 85, ¶ 63, 612 N.W.2d 600, 613:

> To decide a question, we first categorize the problem. If a tort, we ask, what type of

tort? Both the rules and the consequences applying to one tort may not apply to another.

Just as in *Martinmaas*, the categorization of the claim in the case now before us will determine which statute to apply.

sanction a shift to a more beneficial statute of limitations." *Id.*, 1997 SD 108 at ¶ 13, 567 N.W.2d at 876. As a result, the action was governed by the medical malpractice statute of limitations, SDCL 15–2–14.1, and Bruske's claim was not timely filed.

[¶ 27.] There was no claim in Peterson's lawsuit against the doctors other than medical malpractice. He was not intentionally injured.[13] The claim underlying the wrongful death action was based entirely on the doctors' alleged failure to diagnose and prevent the stroke that killed Peterson. No other tort or other claim formed the basis for the lawsuit against the doctors. This was purely and simply a medical malpractice case in which the patient died. Therefore, since the characterization of the claim is medical malpractice, the medical malpractice statute of limitations governs.

### THE MORE SPECIFIC STATUTE

[¶ 28.] A rule of statutory construction is that the more specific statute governs the more general statute. *Faircloth v. Raven Indus., Inc.*, 2000 SD 158, ¶ 11 & 18, 620 N.W.2d 198, 202–03; *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539; *Meyerink v. Northwestern Pub. Serv. Co.*, 391 N.W.2d 180, 184 (S.D.1986). The wrongful death statute of limitations covers deaths caused by intentional homicide, reckless homicide, negligent homicide or by other wrongful act, neglect or default, not just wrongful deaths caused by medical malpractice. The medical malpractice statute of limitations only applies to medical malpractice. The medical malpractice statute of limitations is more specific than the wrongful death statute of limitations. Under this

rule of statutory construction, the more specific two-year medical malpractice statute of limitations governs.

### THE MORE RECENT STATUTE

[¶ 29.] Another rule of statutory construction is that the more recent statute supercedes the older statute. *State v. Harris*, 494 N.W.2d 619, 622 (S.D. 1993). The wrongful death statute of limitations has been three years since it was first enacted in 1909. The two-year medical malpractice statute of limitations was first enacted in 1939 and amended in 1963 to include nurses, lengthened to three years in 1976 and changed from the discovery rule to the occurrence rule and finally, shortened to two years in 1977. Under this rule, the more recent two-year medical malpractice statute of limitations governs.

### THE WORDS OF THE STATUTE

[¶ 30.] Burns argues that the medical malpractice statute of limitations does not mention "death" so it does not cover wrongful death caused by medical malpractice. However, the medical malpractice statute of limitations does not mention "personal injury" either. Extending Burns' argument, the two-year medical malpractice statute of limitations would not cover personal injury because it is not mentioned in the statute. Consequently the three-year personal injury statute of limitations would apply. This line of argument would render the medical malpractice statute of limitations meaningless because it would cover neither personal injury nor death caused by medical malpractice. We should not adopt an interpretation of a statute that renders the statute meaningless when the Legislature

---

**13.** In *Martinmaas*, 2000 SD 85 at ¶¶ 26–29, 612 N.W.2d at 607–08, this Court held that sexual misconduct fell within the definition of malpractice. The concurrence in result by

Justice Konenkamp and the dissent by Justice Amundson point out that rape is an intentional tort and outside the ambit of medical malpractice.

obviously passed it for a reason. *Faircloth,* 2000 SD 158 at ¶ 9, 620 N.W.2d at 202. The more reasonable and meaningful interpretation is that the Legislature intended the two-year medical malpractice statute of limitations to apply to all consequences of medical malpractice, including both personal injury and death.[14] We are also mindful of the rule against supplying omitted language. *South Dakota SIF v. CRE,* 1999 SD 2, ¶ 17, 589 N.W.2d 206, 209. However, the term "an action" is broad enough to encompass both personal injury and death without additional language because the statute speaks to the nature of the cause of action and not the nature of the damages. On its face, the statute covers all damages requested in "an action."

## HARMONIZING THE STATUTES

[¶ 31.] When two statutes of limitations conflict, the statute providing the longer period of time applies. *Zoss v. Schaefers,* 1999 SD 105, ¶ 11, 598 N.W.2d 550, 553. The three-year wrongful death statute of limitations is longer than the two-year medical malpractice statute of limitations. Under this rule, the three-year wrongful death statute of limitations governs. However, in *Faircloth,* 2000 SD 158 at ¶ 11, n3, 620 N.W.2d at 202, n3, this Court held that this rule does not apply when the two statutes can be harmonized.

[¶ 32.] When we interpret a statute, "[n]o wordage should be found to be surplus. No provision can be left without meaning. If possible, effect should be given to every part and every word." *Maynard v. Heeren,* 1997 SD 60, ¶ 14, 563 N.W.2d 830, 835. When construing statutes that are apparently in conflict, the court should read them together and harmonize them if possible to give effect to all words in the statute. *Faircloth,* 2000 SD 158 at ¶ 7, 620 N.W.2d at 201. SDCL 15–2–14.1 provides that an action based on medical malpractice may only be brought within two years of the occurrence. SDCL 21–5–3 requires wrongful death actions to be brought within three years of death. Two years from occurrence will always be less than three years after death. Therefore, the statutes can be read in harmony and both be given effect by applying the two-year medical malpractice statute of limitations to wrongful death caused by medical malpractice.

[¶ 33.] Failure to harmonize the statutes results in a ridiculous and unfair situation. Burns argues that if a person's death is caused by medical malpractice and the person dies before the two-year statute of limitations has run, then the wrongful death statute applies and the survivors get three more years to bring a medical malpractice action. If the person died two years and a day after the medical malpractice occurred, the estate would be barred from suit because the medical malpractice claim was not viable at the time of the person's death. Under Burns' proposal, some survivors would get two years to sue, some would get almost five years and some would not get to sue. By harmonizing the statutes and by applying the two-year medical malpractice statute of limitations, every plaintiff is afforded two years whether the action is for personal injury or death.

## LEGISLATIVE POLICY

[¶ 34.] The legislative policy regarding limitations on lawsuits against medical

---

**14.** Another consequence of medical malpractice could be additional expense to rectify the results of the malpractice. Additional medical expense is not mentioned either. Although not a personal injury per se, additional medical expense is just as clearly within the ambit of the two-year medical malpractice statute of limitations and not the six-year contractual statute of limitations.

practitioners is set forth in *Knowles v. US* (*In re* Certif. of Question of Law), 1996 SD 10, ¶¶ 60–65, 544 N.W.2d 183, 195–97:

> In the mid 1970s, our Legislature, along with many Legislatures throughout the country, became gravely concerned about the availability and cost of health care, especially in rural areas and small communities. Seeing a direct correlation between the availability of health services and skyrocketing medical malpractice insurance premiums, these state legislatures attempted to alleviate the increasing cost of such insurance by enacting statutes limiting the damages recoverable in medical malpractice suits. South Dakota's Legislature prudently responded to this perceived crisis by first setting up a special fact-finding committee to study the problem. After considering public testimony taken over a period of months, the Legislature responded with a $500,000 cap on general (noneconomic) damages for medical malpractice awards for a period of ten years.....
>
> All things considered, the Legislature acted sensibly to meet a perceived crisis. Our elected representatives reasoned a cap on damages would lead to greater ease in calculating premiums, thus making the market more attractive to insurers, which could ultimately lead to reduced premiums, making insurance more affordable for individuals and organizations providing vital health services.
>
> South Dakota faced unique problems in 1976. It had one of the worst doctor-patient ratios in the nation, with only five hundred doctors in the entire State. Availability and affordability of malpractice insurance, especially for solo practitioners in rural areas, was deemed essential to ensure an adequate number of doctors and other health care providers to serve the medical needs of South Dakota citizens.
>
> An unsettled argument persists over whether a malpractice crisis ever actually existed. Yet there can be no doubt, for whatever reason, malpractice premiums were increasing at an alarming rate. Umbrella coverage for a general or family practitioner in South Dakota rose from a rate of $640 a year in 1970 to approximately $8,400 a year in 1976. The problem was especially acute in rural areas. The issue was cast as potentially a life-or-death situation for persons needing that care where its future availability was in doubt. Robert Johnson, Executive Secretary of the South Dakota Medical Association told the special committee "we can't get insurance for solo practitioners. We're the only state that I know of with the problem." South Dakota's hospitals faced similar increases: St. Luke's Hospital in Aberdeen paid $4,060 for $10,000,000 in coverage in 1974; only three years later it paid $75,742 for $2,000,000 in coverage. In Mitchell, St. Joseph's Hospital paid $3,008 for $10,000,000 coverage in 1974 and $40,420 for $2,000,000 coverage in 1977. Unable to afford the premiums during this time, two hospitals in South Dakota went without coverage altogether. In the end, whatever the cost, South Dakota citizens would bear the burden; either through higher medical bills and health insurance premiums; or by not having medical services available because doctors and other providers could not afford to obtain insurance.

Every time the courts have tampered with the special treatment of medical practitioners, the Legislature has closed the loophole.

[¶ 35.] In 1974, the federal district court construed the previous medical malpractice statute to include a discovery rule.

*Shinabarger*, 385 F.Supp. at 711. In 1976, the Legislature repealed the previous statute and enacted the present medical malpractice statute of limitations, SDCL 15–2–14.1, with an occurrence rule. 1976 SD SessL ch 145.

[¶ 36.] In 1978, this Court held that the medical malpractice statute of limitations did not protect medical corporations. *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508 (S.D.1978). In 1979, the Legislature enacted SDCL 15–2–14.3 to include medical corporations in the special treatment in SDCL 15–2–14.1.

[¶ 37.] In 1993, this Court held that the medical malpractice damages cap in SDCL 21–3–11 did not protect medical corporations, *Sander*, 506 N.W.2d at 124–25, and in 1996, declared the medical malpractice damages cap unconstitutional, *Knowles*, 1996 SD 10 at ¶ 33, 544 N.W.2d at 191. In 1997, the Legislature revived a prior damages cap by enacting SDCL 21–3–11.1.

[¶ 38.] The Legislature's policy of protecting medical practitioners is clear.

### TYPES OF LIMITATIONS

[¶ 39.] When the Legislature placed time limits on actions against medical practitioners, the Legislature could have chosen from at least four types of limitations. The first limitations are notice statutes. *Peterson*, 2000 SD 27 at ¶ 13, 607 N.W.2d at 12. If proper notice is not given within a certain limited time, then the injured party cannot sue. SDCL 3–21–2 is an example of a notice statute that requires a claimant to give notice to a public entity within 180 days of an injury.

[¶ 40.] The second limitations are statutes of limitations. "A statute of limitations requires a lawsuit to be filed within a specified period of time after a legal right has been violated or the remedy for the wrong committed is deemed waived."

*Zacher v. Budd Co.*, 396 N.W.2d 122, 129, n5 (S.D.1986).

[¶ 41.] The third limitations are statutes of repose.

A statute of repose bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action. All statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. However, since a statute of repose begins to run from a date unrelated to the date of an injury, it is not designed to allow a reasonable time for the filing of an action once it arises. Therefore, a statute of repose may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy. *Berry v. Beech Aircraft*, 717 P.2d 670, 672 (Utah 1985).

*Id.*

[¶ 42.] The fourth limitations are survival statutes. In *M.S. v. Dinkytown Day Care Center, Inc.*, 485 N.W.2d 587 (S.D.1992), this Court held:

The distinction between a survival statute and a statute of limitations,

'is that a statute of limitations affects the time that a stale claim may be brought *while a survival statute gives life for a limited time to a right or claim that would have been destroyed entirely but for the statute.* These survival statutes arbitrarily extend the life of the corporation to allow remedies connected with the corporation's existence to be asserted.'

*Id.* at 589 (citation omitted) (emphasis in original). A survival statute cannot be tolled. *Id.* at 590.

## STATUTE OF REPOSE

[¶ 43.] The Legislature has consistently limited the time during which medical practitioners are exposed to suits for malpractice and limited the damages available. As a matter of clear public policy, the Legislature has protected doctors from lawsuits by their patients and has diligently maintained the special considerations given to medical practitioners. The policy of the Legislature is clearly to make SDCL 15–2–14.1 a statute of repose.[15] We recognize this policy and will not deviate from it. We hold that SDCL 15–2–14.1 is a statute of repose. If the policy is to be changed, the Legislature, not this Court, should make the change.

## OPEN COURTS

[¶ 44.] Our decision holding that SDCL 15–2–14.1 is a statute of repose has the effect of barring some wrongful death claims before death occurs because some patients may not die within two years of the occurrence of the medical malpractice. This decision will prevent some survivors from suing for the damage of death. In *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n*, 349 N.W.2d 419, 427 (S.D.1984), this Court held that a construction deficiency statute of repose and products liability statute of repose violated the South Dakota Constitution because the Legislature cannot completely abolish a right to sue under the "open courts" provision.[16] However, in *Green*, 1996 SD 146 at ¶ 13, 557 N.W.2d at 400, this Court noted that the "open courts" provision only applies to rights recognized by the common law. Wrongful death actions are not a common law right. *Steckman*, 77 S.D. at 209, 90 N.W.2d at 172. In addition, the Legislature can put reasonable limits on

remedies. *Knowles*, 1996 SD 10 at ¶ 83, 544 N.W.2d at 203; *In re* Estate of Erdmann, 447 N.W.2d 356, 359 (S.D.1989). Here the right to sue for medical malpractice is not abolished, it is only limited to two years. *Green*, 1996 SD 146 at ¶ 33, 557 N.W.2d at 405.

## TOLLING

[¶ 45.] While this Court has recognized that the medical malpractice statute of limitations does not begin to run when there is continuing treatment, *Liffengren v. Bendt*, 2000 SD 91, ¶ 13, 612 N.W.2d 629, 632; *Beckel*, 1998 SD 48 at ¶ 10, 578 N.W.2d at 576; *Alberts*, 299 N.W.2d at 456, or fraudulent concealment, *Bruske*, 1997 SD 108 at ¶ 19, 567 N.W.2d at 879, this Court has held that it cannot be tolled by the discovery rule, *Beckel*, 1998 SD 48 at ¶ 21, 578 N.W.2d at 578; *Alberts*, 299 N.W.2d at 455–56, or equitably tolled by filing an action in the wrong court, *Peterson*, 2000 SD 27 at ¶¶ 16–18, 607 N.W.2d at 13–14. Prior to oral argument, Peterson filed a request to submit late authorities which we granted. Peterson then argued that SDCL 29A–3–109 suspended the running of the statutes of limitations. SDCL 29A–3–109 provides:

> The running of any statute of limitations on a cause of action belonging to a decedent which has not been barred as of the date of death is suspended for one year following the decedent's death but resumes thereafter unless otherwise tolled.

This statute only applies to a claim by the decedent. This statute does not apply to the wrongful death action because it belongs to the statutory beneficiaries, not the decedent, and therefore it does not extend

---

**15.** Justice Morgan referred to the medical malpractice statute of limitations as a statute of repose in *Zacher*, 396 N.W.2d at 144.

**16.** SD Const. Art. 6, § 20.

the statute of limitations on the wrongful death claim.[17]

## CONCLUSION

[¶ 46.] After examining the language of the statutes, the legislative intent and policy, the rules of statutory construction and the precedent from South Dakota regarding statutes of limitations, we reverse the decision of the circuit court determining that the relevant statute of limitations is three years and that Johnson and Eiesland are proper parties to the suit. We hold that the applicable statute is the two-year medical malpractice statute of limitations and remand for further proceedings consistent with this opinion.

[¶ 47.] GILBERTSON, Chief Justice, AMUNDSON, Justice, and MILLER, Retired Chief Justice, (who was a member of the Court at the time this action was submitted), concur.

[¶ 48.] MARTIN, Circuit Judge, dissents.

[¶ 49.] GORS, Circuit Judge, for SABERS, Justice, disqualified.

[¶ 50.] MARTIN, Circuit Judge, for KONENKAMP, Justice, disqualified.

MARTIN, Circuit Judge-dissenting

[¶ 51.] From the manner in which the majority opinion is written, I believe the it *started* from premise that wrongful death actions arising from medical malpractice are within SDCL 15–2–14.1. The majority then eliminated any opposition by utilizing defensive arguments, irrelevant observations, inaccurate analysis, and overruling legal precedent. The majority finally concludes that the legislature intended a clear public policy of special considerations for medical providers and practitioners of the healing arts, and by virtue thereof SDCL 15–2–14.1 is now a statute of repose. A statute of repose limits the time within which an action may be brought, however it begins to run from the occurrence of a specific event which is unrelated to the date of the injury. A citizen may now be barred from filing a lawsuit based on medical malpractice even before the cause of action has arisen. From this position the majority will not deviate.

## ISSUE FOR RESOLUTION

[¶ 52.] The majority states that the issue for resolution is: Does the three-year wrongful death statute of limitations in SDCL 21–5–3 *extend* the two-year medical malpractice statute of limitations set forth in SDCL 15–2–14.1? As between the two statutes, this phraseology automatically determines that wrongful death actions based on medical malpractice fall within the two-year limitation. It puts those who rely on SDCL 21–5–3 on the defensive, requiring some showing that SDCL 21–5–3 is intended to affect (by extension) SDCL 15–2–14.1. I believe this to be an unfair way of setting forth the issue.

[¶ 53.] I believe the issue for resolution is: In South Dakota if a wrongful death action is based on medical malpractice, does the two-year statute of limitation for medical malpractice apply or does the three-year statute of limitations for wrongful death apply?

[¶ 54.] An annotation entitled, "Medical Malpractice: Statute of Limitations in Wrongful Death Action Based on Medical

---

**17.** As to the claim for personal injury and medical expenses filed by the Estate on behalf of Edward Peterson which survived his death under SDCL 15–4–1, Peterson's argument is not a late authority but a new issue. This issue was not raised in the trial court and we will not consider an issue raised for the first time on appeal. *SD Subseq. Injury Fund,* 2000 SD 11 at ¶ 29, 605 N.W.2d at 172.

Malpractice," found at 70 A.L.R.4th 535 sets forth the decisions from other jurisdictions. After review, some jurisdictions hold that the wrongful death statute applies and some hold that the medical malpractice statute applies. However, it is noteworthy that several of the jurisdictions which hold that a wrongful death based on medical malpractice is governed by the medical malpractice action, the term "injury or death" or its equivalent is *specifically provided for in the statute*. No such term is present in our medical malpractice statute.

[¶ 55.] Examination of our statutes, the applicable rules of construction, and our legal precedent will also assist in resolving the issue. SDCL 21–5–3 provides that *"Every* action for *wrongful death* shall be commenced within *three years after the death* of such deceased person."* (emphasis supplied). This statute is plain, clear, and unambiguous. It provides no exception based on medical malpractice.

[¶ 56.] SDCL 15–2–14.1 is the medical malpractice statute and does not specifically include wrongful death as a permissible cause of action thereunder. I believe if the legislature intended this they would have done so and made the appropriate exception in the wrongful death statute. The legislature had four separate opportunities to do so.

[¶ 57.] Historically in South Dakota a cause of action growing out of wrongful death and a cause of action growing out of personal injury are *two different subjects.* The wrongful death statute (1909) created a new cause of action separate and distinct from, and not a continuation of, the common-law cause of action given a party for his own physical injury. Further, a cause of action for physical injury is personal and accrues on the occurrence of the wrong and during the lifetime of a person. A cause of action for wrongful death does not accrue until after the death and is in favor of the beneficiaries designated by statute. The rights under the wrongful death statute arise only by reason of death and the rights under the malpractice actions abate upon the death of a plaintiff. *Simons v. Kidd,* 73 S.D. 41, 38 N.W.2d 883 (1949); *Pexa v. Clark,* 85 S.D. 37, 176 N.W.2d 497 (S.D.1970).

[¶ 58.] The majority applies the two-year medical malpractice statute of limitation from the date of the alleged malpractice, whether the action is for *personal injury or death.* All plaintiffs are allowed two years whether they live or die. Therefore, the majority decision allows the limitation time for a cause of action for wrongful death based on medical malpractice to *start running before the person is dead.* The majority allows an *expiration before an accrual.* This is contrary to our history and legal precedent.

[¶ 59.] SDCL 15–2–14.1 is not now and never was intended to be a statute of repose. The majority has now held that the citizens of this state have no cause of action for medical malpractice after two years have passed from a specific "event," which is unrelated to the date of an injury. The statute does not provide what the specific "event" is nor when the specific "event" occurs but two years thereafter there no longer exists a cause of action for medical malpractice no matter how flagrant the wrong nor how extensive the injury.

## OCCURRENCE RULE AND DATE OF DAMAGES

[¶ 60.] Since the occurrence rule commences at the time of the malpractice and the date of damages rule commences at the time of death, the rules are diametrically opposed to each other unless they occur at the same time (malpractice act results in immediate death). They can be

simultaneous, but they cannot be an exception to each other. Each rule is applicable to its individual action and in favor of different parties. Historically in South Dakota actions for wrongful death are separate and distinct from personal injury actions. The majority has combined them and disregarded legal precedent.

[¶ 61.] The majority further comments on the problem that a person can be kept alive on life support for years. The two-year statute of limitations for medical malpractice could expire while the body continued to exist on life support. Years later, death could revive a medical malpractice action long after the statute of limitations had run. Contingent liability could linger for years. All this may be accurate; however, this is matter for the legislature to address. By the same token, if a person does not die within two years of the medical malpractice then his action is barred from recovery for wrongful death. And how can a wrongful death action be commenced prior to the wrongful death?

## NATURE OF THE CLAIM

[¶ 62.] I respectfully submit that the nature of the claim is *wrongful death* and the *basis* of the claim is medical malpractice. The wrongful death statute applies.

## THE MORE SPECIFIC STATUTE

[¶ 63.] When construing statutes, terms of a statute relating to a particular subject will prevail over general terms of another statute. *Meyerink v. Northwestern Public Service Co.*, 391 N.W.2d 180 (S.D.1986). The majority states that the wrongful death statute of limitations covers deaths caused by intentional homicide, reckless homicide, negligent homicide or by other wrongful act, neglect or default, not just wrongful deaths caused by medical malpractice. If the different ways a

wrongful death can occur are significant then it must also be significant as to how many different ways medical malpractice can occur, based on contract or tort. Further, the majority feels that the medical malpractice statute is applicable to personal injury *and* death. We know the wrongful death statute is restricted to only death. The wrongful death statute is more specific.

## THE MORE RECENT STATUTE

[¶ 64.] The majority cites *State v. Harris*, 494 N.W.2d 619, 622 (S.D.1993) for the statutory construction rule that the more recent statute supercedes the older statute. This case addressed rewritten statutes dealing with a juvenile transfer hearing. Both statutes dealt with a transfer hearing and therefore were relating to the same subject matter. At present, we are not dealing with statutes dealing with the same subject matter. Historically this state had held that a cause of action growing out of personal injury and one growing out of death by negligence constitute two different subjects. *Simons v. Kidd*, 73 S.D. 41, 38 N.W.2d 883 (1949).

[¶ 65.] The wrongful death statute was enacted in 1909 and has always had a three-year statute of limitation. The medical malpractice statute was enacted in 1945 and experienced amendments in 1963, 1976, and 1977. At its enactment and each time this statute was amended the legislature was aware of the wrongful death statute. If the legislature fairly and reasonably intended that wrongful death actions based on medical malpractice were to be included in the medical malpractice statute it could easily have so provided.

## THE WORDS OF THE STATUTE

[¶ 66.] Under SDCL 21–5–3 (wrongful death) the word "every" is provided. The all-inclusiveness of this word is irrefutable.

There is no exception for medical malpractice in this statute.

[¶ 67.] Under SDCL 15–2–14.1 the statute starts out with the words "an action." "An" action does not mean "every" action. The majority acknowledges that the medical malpractice statute does not mention "wrongful death," but states the medical malpractice statute also does not mention "personal injury." The majority thus concludes that because Burns argues that the absence of the term "wrongful death" in the medical malpractice action indicates that it does not include wrongful death actions, that Burns must concede that the medical malpractice statute would not cover actions for "personal injury." Thus, Burns would have to concede that the medical malpractice statute is rendered meaningless, because it would cover neither wrongful death nor personal injury.

[¶ 68.] First of all, I think that any effort to "extend" the argument of Burns in this fashion is patently unfair. Burns has never taken this posture and to state that he must is untenable.

[¶ 69.] Secondly, the medical malpractice statute provides that the "action" must be based on malpractice, error, mistake or failure to cure, and can be based upon *tort.* SDCL 15–1–1 provides in part: "An *action* is an ordinary proceeding in a court of justice, by which a party prosecutes another party for the enforcement, determination, or protection of a right, *the redress* or prevention *of a wrong,* or the punishment of a public offense." (emphasis supplied). SDCL 20–9–1 provides for a person's responsibility for injury caused by willful acts or negligence. A reasonable interpretation of these statutes provides that a "personal injury" action is allowed under our medical malpractice statute. In fact I believe it is exclusively allowed.

[¶ 70.] Lastly, the term "wrongful death" is conspicuously absent from the medical malpractice statute but conspicuously present in the wrongful death statute.

[¶ 71.] The majority later acknowledges that "an action" does encompass "personal injury." The majority cannot have this both ways. If they acknowledge that "personal injury" is provided for in the medical malpractice statute they must acknowledge that "wrongful death" is not.

[¶ 72.] In determining whether it is a fair construction that SDCL 15–2–14.1 includes wrongful deaths, I feel further scrutiny is required. SDCL 15–2–14.1 provides that an action can be brought against a physician, surgeon, *dentist,* hospital, *sanitarium,* registered nurse, licensed practical nurse, *chiropractor,* or other *practitioner of the healing arts.* SDCL ch 36–2 deals with practitioners of healing arts, and pursuant to SDCL 36–2–1(3) "healing art" is defined. "Healing, art of healing, practicing healing, practicing of healing, any system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, unhealthy or abnormal physical or mental condition." With this broad definition this statute could also include optometry, podiatry, physical therapists and even masseurs.

[¶ 73.] Wrongful death actions against a chiropractor, dentist, sanitarium, optometrist, podiatrist, physical therapist, and perhaps a masseur! Is this a reasonable construction of this statute? I don't believe so.

[¶ 74.] A clear and reasonable interpretation of SDCL 15–2–14.1 is that at its inception and through its three amend-

ments, it covers actions for personal injury, not wrongful death actions.

## HARMONIZING THE STATUTES

[¶ 75.] Where conflicting statutes appear, it is the responsibility of the court to give reasonable construction to both, and to give effect, if possible, to all provisions under consideration, construing them together to make them harmonious and workable. After doing so I find that these statutes cannot be harmonized by including a wrongful death action in the medical malpractice statute. As stated earlier, the medical malpractice statute commences to run on the date of occurrence and the wrongful death statute commences to run upon the death of the person. It is difficult to conceive that the occurrence statute of limitation can have any effect on a statute of limitation that commences only upon the death of an individual. The majority holds that the statute of limitations for wrongful death based on medical malpractice starts running *before the person is dead!* The actions are separate and distinct. These two statutes do not mesh and no amount of intellectual rationalization will accomplish this.

[¶ 76.] Even assuming that the majority is correct, then there is a conflict between these statutes since there would be an action for wrongful death under both statutes and two different time limitations. When this occurs, the statute providing the longer period of time applies. *Zoss v. Schaefers*, 1999 SD 105, 598 N.W.2d 550.

## STATUTE OF REPOSE

[¶ 77.] The majority holds that SDCL 15–2–14.1 is a statute of repose. As per the majority a statute of repose *bars all actions after a specified period of time has run from the occurrence of some event other than the occurrence of an injury that gives rise to a cause of action.* All statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. However, since a statute of repose begins to run from *a date unrelated to the date of an injury*, it is not designed to allow a reasonable time for the filing of an action once it arises. Therefore, a statute of repose may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred and even though the injured person was diligent in seeking a judicial remedy. *Berry v. Beech Aircraft*, 717 P.2d 670, 672 (Utah 1985).

[¶ 78.] 54 CJS *Limitations of Actions* § 4 (1987) provides: "A statute of repose ... limits the time within which an action may be brought and is *not related to the accrual of any cause of action;* the injury need not have occurred much less have been discovered. *Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.*" (emphasis supplied).

[¶ 79.] If SDCL 15–2–14.1 is a statute of repose and not a statute of limitation then the occurrence rule regarding the date of injury is inapplicable. South Dakota precedent in this regard is overruled. Further, SDCL 15–2–14.1 does not provide what the specific "event" is that will trigger the commencement of the two-year time limit? Is it the time the physician started his/her medical practice? The first treatment date for patient? Subsequent treatment dates? What if you switch physicians? SDCL 15–2–14.1 is not restricted to physicians but also applies to various medical providers, practitioners of the healing arts, and to hospitals and sanitariums. What is the specific "event" for these people and institutions?

[¶ 80.] Whatever and whenever the specific "event" happens, a citizen no longer has a right to sue after two years has expired therefrom. Once the two years has passed, the medical treatment or services rendered can be negligent, causing personal injuries of whatever kind, nature, and extent, and the citizens of this state have no legal recourse. I do not believe the legislature of this state intended as a matter of public policy to protect the medical profession to this extent.

## CONCLUSION

[¶ 81.] By virtue of this ruling I believe the following has occurred:

1. The inclusion of the term "wrongful death" (An action, including wrongful death, * *) into SDCL 15–2–14.1, and the inclusion of the language "except wrongful death based on medical malpractice" into SDCL 21–5–3. This is a legislative function nor judicial.

2. Actions for personal injury and actions for wrongful death are no longer separate and distinct actions. History and precedent are set aside. The limitation for wrongful death based on medical malpractice can now commence running even though a person is not yet dead.

3. The party injured through medical malpractice must die within two years of the date of occurrence. Actually this is modified by the holding that SDCL 15–2–14.1 is a statute of repose so, depending on what the specific "event" is and when the specific "event" occurred, a party may still not be able to bring the action.

4. A reasonable construction of SDCL 15–2–14.1 includes wrongful death, and therefore applies to any dentist, sanitarium, nurse, chiropractor, or other practitioner of the healing art such as a podiatrist, optometrist, physical therapist and perhaps a masseur. This allows an action in the event any of these people negligently killed someone during the rendering of their respective services. Remembering of course that this statute is a statute of repose and therefore the liability exposure will depend on the specific "event" and when it triggered the running of the two-year limitation.

5. Finally, that SDCL 15–2–14.1 is a statute of repose. Depending on what the specific "event" is and when the specific "event" occurs the statutory period of two years commences to run. This "event" is completely unrelated to the date of an injury and may bar the filing of a lawsuit even though the cause of action did not even arise until after it was barred. After this two-year period has expired regarding a party then this party no longer has a right to commence an action based on medical malpractice, no matter how egregious the services rendered or how extensive the injury.

[¶ 82.] The majority holds that Johnson and Eiesland are no longer proper parties to the lawsuit. However, since SDCL 15–2–14.1 is a statute of repose this may not be accurate. The uncertainty is because we do not know when the two-year limitation of SDCL 15–2–14.1 commences to run. It is not related to the date of injury but depends on a specific "event" and when the "event" occurred. This determination will not only decide whether Johnson and Eiesland are dismissed but also whether Burns is no longer a proper party. If the "event" occurred over two years prior to Burns getting involved in the lawsuit then perhaps the permissible limitation had run and the lawsuit was no longer viable.

[¶ 83.] SDCL 15–2–14.1 does not provide this specific "event." Apparently the legislature has again left this decision for the judiciary.

[¶ 84.] Therefore, I believe the majority must provide what specific "event" is

and when the specific "event" occurs so the trial court and the attorneys involved know how to determine if the plaintiff has been barred completely by the statute of repose, SDCL 15–2–14.1 and so the bar association and judiciary may also be appraised for future reference.